UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANNA MCNAIR,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:14-CV-03117-JTR<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 18. Attorney D. James Tree represents Shanna McNair (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

# JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on July 19, 2011, alleging disability beginning August 28, 2010. Tr. 193-198. The application was denied initially and upon reconsideration. Tr. 118-121, 124-126. Administrative Law Judge (ALJ) Tom L. Morris held a video hearing on January 24, 2013, at which Plaintiff, represented by counsel, testified as did Stephanie Boyce and vocational expert (VE) Paul Prachyl. Tr. 35-93. The ALJ issued an unfavorable decision on March 19, 2013, Tr. 20-30, and the Appeals Council denied review, Tr. 1-4. The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 19, 2014. ECF No. 1, 4.

# STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 47 years old at the time she filed her SSI application. Tr. 37. Plaintiff did not graduate from high school but does have a GED. Tr. 46. Plaintiff's mother and stepfather were alcoholics and abused Plaintiff as a child. Tr. 46-47. Plaintiff previously worked as an in-home caregiver and as a cashier at a convenience store. Tr. 60, 214.

At the administrative hearing, Plaintiff testified she can't work on account of her back pain, irritable bowel syndrome (IBS), and because she "can't keep in [her] head what [she is] supposed to do." Tr. 46. Plaintiff has feelings of guilt and worthlessness and thoughts of self-harm. Tr. 50-51. Plaintiff testified she has trouble focusing and concentrating. Tr. 52-53. Plaintiff testified crowds of people make her nervous and anxious. Tr. 54. Plaintiff also reported a constant, sharp pain in her lower back that sometimes gets so bad that she has to go to the

emergency room. Tr. 58. Plaintiff uses the emergency room because she does not have insurance and does not "have anywhere else to go." Tr. 58. Plaintiff testified her IBS symptoms occur three to four times a month on an unpredictable basis, requiring her to use the bathroom eight or nine times a day for thirty to forty five minutes at a time. Tr. 62.

Plaintiff lives with her grown son. Tr. 64. Plaintiff will generally only leave her home in the company of her daughter; Plaintiff does not go out by herself. Tr. 49. Plaintiff tries to help with household chores, but can only stand up for between five and fifteen minutes. Tr. 58. Plaintiff testified she has to lie down "[a] dozen times a day" for as long as twenty minutes to an hour at a time. Tr. 59. Plaintiff testified she cries on a daily basis. Tr. 48-49. Most days, Plaintiff stays in her bedroom, watches television for two to three hours, and spends several hours "[j]ust thinking." Tr. 48-49, 66.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence

will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On March 19, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 19, 2011, the application date. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: IBS, lumbar degenerative disc disease, mildly reactive arthritis of the left elbow and bilateral shoulders and knees, myalgias, obesity, and depression.

Tr. 22. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 23.

The ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry 20 pounds occasionally[] and 10 pounds frequently. [Plaintiff] can sit for 6 hours in an 8-hour workday, and can stand and/or walk for 6 hours in an 8-hour workday with regular breaks. [Plaintiff] is capable of remembering multi-step and detailed instructions. She is limited to only occasional need for close attention to detail for work tasks. [Plaintiff] should have no production rate pace work, but rather goal-oriented work.

Tr. 25.

At step four, the ALJ found Plaintiff capable of performing past relevant work as a cashier/checker. Tr. 28.

The ALJ made an alternative step five determination that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the jobs of industrial cleaner, parking lot attendant, and office helper. Tr. 29. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 19, 2011, through the date of the ALJ's decision. Tr. 29-30.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) not crediting Plaintiff's testimony about the severity of her symptoms, (2) rejecting evidence from non-medical sources, and (3) not including all of Plaintiff's functional limitations in the ALJ's RFC determination, including the limitations assessed by reviewing sources.

**DISCUSSION**

**A.    Credibility**

Plaintiff argues the ALJ erred in finding her symptom reporting less than credible.  ECF No. 14 at 7-16.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039.  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but did not find all of Plaintiff's statements concerning these symptoms credible.  Tr. 25-26.  The ALJ reasoned that Plaintiff was less than credible because (1) her allegations of disabling joint and back pain were contrary to the medical evidence, (2) her reported activities were inconsistent with her alleged impairments, (3) the fact that Plaintiff did not seek regular treatment for her IBS belied Plaintiff's reports of disabling symptoms, and (4) Plaintiff gave conflicting statements about her mental health symptoms.  Tr. 26.

**1.    Contrary to the Medical Evidence**

The ALJ's first reason for discounting Plaintiff's credibility, *i.e.*, that Plaintiff's alleged joint and back pain was contrary to the medical evidence, is a specific, clear, and convincing reason supported by substantial evidence.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff underwent a number of procedures attempting to identify the source of her symptoms, including a bone imaging scan, an MRI, and EMG and nerve conduction studies. Tr. 417-423. In October 2011, S. Daniel Sletzer, M.D., a physician at Yakima Medical Consultants, Inc., reviewed the results of these tests and opined they revealed nothing that would preclude Plaintiff from performing medium level work. Tr. 424-425. Dr. Sletzer further opined that Plaintiff's ailments could likely be treated with over-the-counter anti-inflammatories. Tr. 425. Reviewing State agency physician Robert Hoskins, M.D., considered Dr. Sletzer's review of Plaintiff's test results and likewise concluded Plaintiff did not have disabling physical impairments. Tr. 113. The ALJ's reliance on this evidence was not in error.

### 2. Contrary to Plaintiff's Reported Activities

The ALJ's second reason for discounting Plaintiff's credibility, i.e., that Plaintiff's reported activities were inconsistent with her testimony, is not supported by substantial evidence.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted).

The ALJ found Plaintiff's reporting of her mental symptoms and her testimony that she generally isolates herself in her bedroom contrary to the fact that she walked for exercise, moved furniture, travelled to a convenience store, and looked after her granddaughter. Tr. 26. Plaintiff's one report of walking for exercise, Tr. 465, one report of moving furniture, Tr. 469, and one report of driving four blocks to a convenience store, Tr. 65, are isolated instances in a record spanning several years. These instances do not constitute substantial evidence that Plaintiff's activities are contrary to her reported symptoms. *See Tackett*, 180 F.3d at 1098 (substantial evidence defined as being more than a mere scintilla). Also, as

argued by Plaintiff, the times she walked and moved furniture caused Plaintiff increased pain. Tr. 466, 469. Regarding Plaintiff's ability to babysit her granddaughter, the ALJ suggests that, because Plaintiff was "allowed to care for a small child," she must not be as forgetful and confused as she alleges. Tr. 26. The ALJ again mischaracterized the record. Plaintiff and Ms. Boyce essentially testified Ms. Boyce will sometimes bring her daughter to visit Plaintiff and Plaintiff will watch television or sit with her granddaughter while Ms. Boyce remains at Plaintiff's residence. Tr. 45, 75. There is no evidence Plaintiff independently babysits her granddaughter on a regular basis or does anything more than sit or lie down with her granddaughter.

In sum, there is no evidence Plaintiff spends "a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. Instead, substantial evidence in the record, including the testimony of Ms. Boyce and Plaintiff's medical records, supports Plaintiff's description of her daily activities. Therefore, the ALJ's conclusion that Plaintiff's symptom reporting was inconsistent with her reports of daily activities is not supported by substantial evidence.

### 3. Lack of Treatment for IBS

The ALJ's third reason for discounting Plaintiff's credibility, i.e., she did not seek regular treatment for her IBS, is not a specific, clear, and convincing reason.

In assessing a claimant's credibility, the ALJ may rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Failure to seek out or follow a course of treatment may be excused, however, if the claimant cannot afford the treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The ALJ recognized Plaintiff has a history of digestive problems and several medical sources diagnosed her with, and treated her for, IBS. Tr. 26. As determined by the ALJ, the record indicates Plaintiff sought relatively limited

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 8

treatment for her IBS symptoms. On July 27 and July 28, 2011, Plaintiff sought emergency room treatment for abdominal pain, which she claimed had started five days prior. Tr. 340. Plaintiff was diagnosed with IBS. Tr. 336. Yet, the ALJ reasoned, when Plaintiff presented to the emergency room on March 31, 2012, Tr. 428-437, and October 16, 2012, Tr. 465-478, she did not seek treatment for IBS or mention debilitating symptoms associated with IBS. The ALJ found Plaintiff's failure to report her IBS symptoms inconsistent with the fact that she "visit[ed] the doctor regularly for other issues." Tr. 26. But, as argued by Plaintiff, the records relied upon by the ALJ to conclude that Plaintiff "visit[ed] the doctor regularly for other issues," Tr. 26, are primarily emergency room visits—not regular doctor visits.

Apparently, Plaintiff has not had regular access to a treating physician since some time in 2010, when she last had health insurance. *See* Tr. 57 (Plaintiff testifying her application for state insurance benefits was denied); Tr. 58 (Plaintiff testifying she did not have insurance at the time of the hearing); Tr. 234 (Ms. Phillips noting Plaintiff lost insurance coverage in August 2010); Tr. 342 (Plaintiff reported she stopped taking prescription medication due to insurance issues). Although the ALJ may rely to some extent on inconsistencies in the record, the ALJ mischaracterized the record in finding Plaintiff "visit[ed] the doctor regularly for other issues," Tr. 26, and erred by not taking into account Plaintiff's lack of money and insurance, which would excuse her failure to seek more regular treatment. *Gamble*, 68 F.3d at 321.

### 4. Inconsistent Reporting

The ALJ's fourth reason for finding Plaintiff less than credible, i.e., the fact that she gave inconsistent statements about her mental health symptoms, Tr. 26, is not a specific, clear, and convincing reason.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

The ALJ stated that Plaintiff gave "conflicting statements about her mental health symptoms," but then goes on to describe how Plaintiff's activities were inconsistent with her reporting of her mental impairments. Tr. 26. The ALJ also noted that when Plaintiff presented to Dr. Toews for a psychological evaluation, she appeared pleasant and her mental status exam indicated she was cognitively intact with good attention and concentration. Tr. 26 (citing Tr. 399-401). As discussed *supra*, Plaintiff's symptom reporting is not contrary to the isolated instances of activity cited by the ALJ. The ALJ's finding that Plaintiff made "conflicting statements" appears to be based on her presentation at Dr. Toews' psychological evaluation and her responses given as part of the mental status exam. As documented in Dr. Toews' evaluation, Tr. 397-398, Plaintiff's reporting of her mental health symptoms to Dr. Toews was very similar to her testimony at the hearing, Tr. 46-66. Because the ALJ failed to give any specific instances where Plaintiff actually gave "conflicting statements" about her symptoms, this is not a specific, clear, and convincing reason to discount her credibility.

**B.    Lay testimony**

Plaintiff argues the ALJ failed to properly consider the statements of Lori Philips, Plaintiff's former employer, and Stephanie Boyce, Plaintiff's daughter. ECF No. 14 at 21.

Lay witness testimony cannot establish the existence of medically determinable impairments. *See* 20 C.F.R. § 416.913(d)(a). But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(d)(4); *see also Dodrill*, 12 F.3d at 918-919 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

1    At the hearing, Ms. Boyce testified Plaintiff spends most of her time in her
2  bedroom, watching television or sleeping. Tr. 70. Ms. Boyce described Plaintiff
3  as usually "[v]ery moody, tearful, introspective," and "easily distracted." Tr. 71.
4  When Ms. Boyce attempts to get Plaintiff to perform household chores, Ms. Boyce
5  must constantly remind Plaintiff to stay on task. Tr. 71-72. Ms. Boyce stated
6  Plaintiff's mental faculties are declining and Plaintiff can't remember things. Tr.
7  74. Ms. Boyce takes Plaintiff shopping about once a month. Tr. 78.
8    In a letter dated December 8, 2010, Ms. Phillips, Assistant Agency Director
9  for Addus Healthcare, stated Plaintiff worked for her agency from February 28,
10 2009, to August 27, 2010. Ms. Phillips described how Plaintiff's health issues
11 made her unable to work as a caregiver. Tr. 234. Ms. Phillips commented that
12 Plaintiff's attendance at work "declin[ed] rapidly" and Plaintiff had to reduce her
13 hours, causing her to lose health insurance coverage. Tr. 234.
14   The ALJ considered the statements of Ms. Phillips and the testimony of Ms.
15 Boyce, but gave the statements little weight because they were based on Plaintiff's
16 unreliable self-reporting. Tr. 27-28.
17   An ALJ may generally discount a doctor's opinion based on a claimant's
18 unreliable self-report. *Tommasetti*, 533 F.3d at 1041. The Court assumes, without
19 deciding, that the ALJ may also discount a lay witness's statements that are based
20 on a claimant's unreliable self-report. It seems that in most cases, however, lay
21 witnesses base their testimony on their personal observations rather than a
22 claimant's self-reporting. *See Dodrill*, 12 F.3d at 918-919 (noting that friends and
23 family are in a position to "observe" claimants). Such is the case here. Ms.
24 Phillips, Plaintiff's former employer, wrote a letter based on her experience as
25 Plaintiff's employer. Ms. Boyce, Plaintiff's daughter, testified about her personal
26 observations of Plaintiff from seeing Plaintiff a "[c]ouple times a week," Tr. 70,
27 presumably over a period of many years. Neither Ms. Phillips nor Ms. Boyce's
28 testimony was based on Plaintiff's self-reporting; therefore, the ALJ's rejection of

their testimony on the grounds that it was based on Plaintiff's unreliable self-reporting was not a germane reason. On remand, the ALJ should reevaluate the testimony of Ms. Boyce and the statements of Ms. Phillips.

**C.    RFC assessment**

Plaintiff argues that the ALJ failed to include in his RFC determination all of Plaintiff's functional limitations. ECF No. 14 at 16-20.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). In formulating a RFC, the ALJ weighs medical and other source opinion and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

The ALJ found Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry 20 pounds occasionally[] and 10 pounds frequently. [Plaintiff] can sit for 6 hours in an 8-hour workday, and can stand and/or walk for 6 hours in an 8-hour workday with regular breaks. [Plaintiff] is capable of remembering multi-step and detailed instructions. She is limited to only occasional need for close attention to detail for work tasks. [Plaintiff] should have no production rate pace work, but rather goal-oriented work.

Tr. 25. When the ALJ asked the VE if a hypothetical individual with Plaintiff's background and these limitations could work, the VE opined that the individual could work as a cashier checker, housekeeping cleaner, parking lot attendant, and office helper. Tr. 81-84.

Plaintiff first argues the ALJ failed to include in his RFC determination the fact that Plaintiff was "moderately limited in her ability to maintain attention and

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 12

concentration for extended period and perform activities within a schedule." ECF No. 14 at 17.

The ALJ gave great weight to the opinions of Dan Donahue, Ph.D. and Alex Fisher, Ph.D., both State agency reviewing doctors. Tr. 26-27. Dr. Donahue found Plaintiff "moderately limited" in her ability to maintain attention and concentration for extended periods and her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 102. Dr. Fisher found Plaintiff "moderately limited" in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 114. Summarizing Dr. Donahue's and Dr. Fisher's assessments, the ALJ found that Plaintiff "would not be significantly limited in her ability to carry out either short or detailed instructions, and that she would be moderately limited in her ability to maintain attention and concentration for extended periods and perform activities within a schedule." Tr. 27.

Defendant argues the ALJ's RFC takes into account these limitations by stating: "[Plaintiff] is capable of remembering multi-step and detailed instructions. She is limited to only occasional need for close attention to detail for work tasks. [Plaintiff] should have no production rate pace work, but rather goal-oriented work." ECF No. 18 at 11 (citing Tr. 25). The Court agrees with Defendant that this portion of the ALJ's RFC generally conveys the limitations opined by Drs. Donahue and Fisher even though the language of the RFC and the ALJ's summarization of the opinions of Drs. Donahue and Fisher slightly differs.

Plaintiff also argues the RFC does not take into account Plaintiff's IBS symptoms, which according to Plaintiff affects her three or four days a month and, on each of these days, requires her to use the bathroom eight to nine times per day. ECF No. 14 at 19. As discussed *supra*, Plaintiff has a history of IBS. Because

Plaintiff has not had regular access to a treating medical source, however, documentation of her IBS symptoms and related treatment is somewhat scarce. Other than diagnoses of IBS and limited treatment records, Plaintiff's testimony is essentially the only evidence of the severity of her IBS symptoms. If, on remand, the ALJ credits Plaintiff's self-reporting, he should include in his RFC determination limitations accounting for Plaintiff's IBS symptoms.

The ALJ might also consider soliciting a medical expert to interpret the medical records concerning Plaintiff's IBS. The medical expert may also consider whether the record supports finding that any treatment was effective in controlling Plaintiff's IBS. The Court notes that Plaintiff at times apparently used prescription medication to control her symptoms but whether the medication was effective is unclear. *See* Tr. 342 (stopped taking Reglan due to insurance issues); *but see* Tr. 343 ("pain unrelieved by gas-x or [R]eglan"). Also, at least one medical provider opined that Plaintiff's IBS may be triggered by "stress, foods, anxiety or other issues." Tr. 384. If, upon further development of the record, substantial evidence supports finding that Plaintiff's IBS can be effectively controlled by medication, changes in diet or lifestyle, or management of mental impairments, then there may be grounds to conclude Plaintiff's IBS is not disabling. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects.

*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reexamine Plaintiff's statements and testimony consistent with this Order, and, if necessary, reassess Plaintiff's RFC.  The ALJ may need to elicit the testimony of a medical expert to assist the ALJ in determining the severity of Plaintiff's IBS.  The ALJ may obtain supplemental testimony from a VE and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 22, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE